UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ISAIAH SANO,

               Plaintiff.                22-cv-7688-DLI-TAM

      - against -

THE CITY OF NEW YORK, POLICE OFFICER
DEVON D MOSES, SHIELD # 968022, POLICE
OFFICER PATRICK SANON, SHIELD # 269, &
DETECTIVE BRIAN P FLYNN, SHIELD # 1067,

               Defendants.
-------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS


LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated:     Brooklyn, New York
           July 16, 2023

                  *Caner Demirayak*
                  Caner Demirayak, Esq.
                  300 Cadman Plaza West
                  One Pierrepont Plaza, 12th Floor
                  Brooklyn, New York 11201
                  718-344-6048
                  Fax: 646-679-2527
                  caner@canerlawoffice.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ...................................................................... 3

    The Shooting Investigation ......................................................... 3

    The False Arrest ........................................................................... 4

    The Malicious Prosecution ......................................................... 5

    The Grand Jury Refuses to Indict on the Top Charges ................ 6

    The Criminal Case is Dismissed in its Entirety ......................... 7

ARGUMENT ........................................................................................ 7

I.    PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR FALSE ARREST AS THERE WAS NEITHER ARGUABLE NOR ACTUAL PROBABLE CAUSE FOR THE ARREST AND THE FACTS ARE OTHERWISE IN DISPUTE ........................ 7

    A.    Probable Cause is in Dispute ........................................ 7

    B.    Defendants are not Entitled to Qualified Immunity as a Matter of Law ................................................................. 8

    C.    The Fellow Officer Rule Does not Apply as Facts are in Dispute ...... 9

    D.    The Arrest was Invalid on its Face ............................... 10

    E.    Probable Cause was Lacking as to the Supposed Criminal Conduct and is Otherwise in Dispute ............... 12

        i. There was no Probable Cause for Attempted Murder, Attempted Assault Criminal Use of a Firearm or Possession of a Controlled Substance and the Grand Jury Voted No ........................ 13

        ii.There was no Probable Cause for Criminal Possession of a Weapon or Firearm, and the Indictment was Later Dismissed ......................... 15

II.    PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR MALICIOUS PROSECUTION AS THE GRAND JURY'S REFUSAL TO INDICT ON THE TOP CHARGES DEFEATS ANY CLAIM OF PROBABLE CAUSE AND THE AMENDED COMPLAINT SETS FORTH FACTS TO REBUT ANY PRESUMPTION OF PROBABLE CAUSE AS TO ALL OTHER CRIMES FOR WHICH PLAINTIFF WAS PROSECUTED ........................ 16

    A.    Defendants Lacked Probable Cause to Prosecute Plaintiff ............. 16

    B.    The Prosecution of Plaintiff was with Malice and an Inference of Malice is Raised by the Lack of Probable Cause ................... 17

**C.** **The Grand Jury's Refusal to Indict on Attempted Murder, Criminal Use of a Firearm, Attempted Assault and Possession of a Controlled Substance Evidences the Complete Lack of Probable Cause and Demonstrates Malice** ........................................................................ 18

**III.** **PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR A DENIAL OF A FAIR TRIAL AS THE DEFENDANTS PROVIDED FALSE TESTIMONY AND FABRICATED EVIDENCE REGARDLESS AS TO WHETHER THERE WAS ARGUABLE OR ACTUAL PROBABLE CAUSE** ...................................................... 20

  **A.** **Defendants Denied Plaintiff a Fair Trial** .................................................. 20

  **B.** **Plaintiff Withdraws his Claims for Failure to Intervene, Supervisory Liability Conspiracy and Municipal Liability/Monell Claim** ................ 21

**IV.** **THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER ALL NEW YORK STATE LAW CLAIMS WHEN DENYING THE DEFENDANT'S MOTION TO DISMISS** ...................................................... 21

  **CONCLUSION** ............................................................................................. 22

ii

## TABLE OF AUTHORITIES

**Cases**

*Ashley v. City of New York,*
  992 F.3d 128 (2d Cir. 2021) ........................................................................ 18

*Boyd v. City of New York,*
  336 F.3d 72 (2d Cir. 2003) ......................................................................... 15

*Dowtin v. O'Neill,*
  2019 U.S. Dist LEXIS 224600 (E.D.N.Y., Jan. 7, 2019) (Hall, D.J.) ...................... 11

*Dufort v City of New York,*
  874 F.3d 338 (2d Cir. 2017) .......................................................................... 7

*Ekeland v. Binns,*
  2023 U.S. Dist. LEXIS 103588 (E.D.N.Y. Jun. 14, 2023) (Gonzalez, D.J.) ............. 10

*Garcia v. Doe,*
  729 F.3d 84 (2d Cir. 2015) ............................................................................ 8

*Jackson v. City of New York,*
  935 F. Supp. 2d 235 (E.D.N.Y. 2013) (Kuntz, D.J.) .......................................... 9

*Josie v. City of New York,*
  2023 U.S. Dist. LEXIS 95687 (E.D.N.Y. 2023) (Ross, D.J.) ................................ 16

*Kee v. City of New York,*
  12 F.4th 150 (2d Cir. 2021) ..................................................................... 7, 14

*Lowth v. Town of Cheektowaga,*
  82 F.3d 563 (2d Cir. 1996) .......................................................................... 10

*Garnett v. Undercover Officer C0039,*
  838 F.3d 265 (2d Cir. 2016) ........................................................................ 18

*McKinley v. Crevatas,*
  2023 U.S. Dist. LEXIS 115544  (S.D.N.Y. Jul. 6, 2023) (Failla, D.J.) .......... 9, 14, 15

*Moore v Comesanas,*
    32 F.3d 670 (2d Cir. 1994) ............................................................................ 7

*Morris v. Silvestre,*
    604 F. App'x 22 (2d Cir. 2015) ..................................................................... 15

*Stansbury v. Wertman,*
    721 F.3d 84 (2d Cir. 2013)) .......................................................................... 14

*Weyant v. Okst,*
    101 F.3d 845 (2d Cir. 1996) ........................................................................... 7

*Wingate v. Gives,*
    725 F. App'x 32 (2d Cir. 2018) ..................................................................... 11

**Statutes**

N.Y. C.P.L. 160.50 ............................................................................................. 9

N.Y. P.L. 110/120.10(1) ................................................................................... 12

N.Y. P.L. 110/125.25(1) ................................................................................... 12

N.Y. P.L. 220.03 ............................................................................................... 11

N.Y. P.L. 265.01-B(1) ...................................................................................... 12

N.Y. P.L. 265.03(3) .......................................................................................... 12

N.Y. P.L. 265.09(1)(A) ..................................................................................... 12

Plaintiff, Isaiah Sano, respectfully submits the following memorandum of law in opposition to the defendants' motion to dismiss the Amended Complaint (hereinafter "AC").

## PRELIMINARY STATEMENT

On October 23, 2021, a shooting allegedly occurred near 2946 West 23rd Street, Brooklyn, New York. AC ¶ 14. Two individuals were allegedly involved in that shooting. Isaiah Sano lives in an apartment in that large building. Isaiah was not involved in the shooting and denies involvement. AC ¶ 45. The police have never determined who the two individuals were.

The difficulty in the police identifying any suspects led them to falsely accuse Isaiah of the shooting without any reasonable basis, arguable or probable cause. The police knew this was not correct and did not obtain an arrest warrant for Isaiah nor a search warrant for his premises. AC ¶¶ 29-32. Instead, they waited for him outside of his apartment and falsely arrested him. *Id.*

The police would then bring Isaiah to three different precincts and begin to maliciously prosecute him for attempted murder in the second degree, attempted assault in the first degree and various weapons charges. AC ¶¶ 35-40. When the police made these accusations, they knew they were not true, and they still submitted false and fabricated evidence to the prosecutor and eventually the Grand Jury. AC ¶¶ 43-51. However, the Grand Jury did not indict Isaiah on the attempted murder or assault charges, criminal use of a firearm, nor the possession of controlled substance charges. AC ¶ 50. A finding defeating any claims of probable cause.

1

The weapons possession charges were equally lacking any basis as no firearms, fingerprints or DNA evidence were obtained. AC ¶¶ 52-53. It is also questionable as to how the Grand Jury would indict on possession charges but not using the firearm if the supposed video footage was so clear. Isaiah did not commit these crimes.

During the prosecution of the case no evidence was ever exchanged. AC ¶¶ 52 & 56. The supposed video footage supporting the case was not turned over, and it is not clear if it exists. Even if it exists, it is not clear what it actually depicts. An identification notice was not exchanged. No information was turned over as to how police officer Patrick Sanon was familiar with Isaiah and could identify him on the video. It is not clear as to what the various defendants informed each other of.

No materials relating to the Grand Jury were turned over. The minutes, evidence, testimony and votes were never exchanged. No photographs, not a single piece of evidence other than the body worn camera footage from the date of the illegal arrest. Defendants' position is that arguable or actual probable cause existed because they said so. This is not a question that can be determined at this stage of the dispute.

The prosecutor's refusal to timely provide the discovery implied that they did not feel the case was valid. The Court would dismiss the case six months later for violation of numerous provisions of the Criminal Procedure Law. AC ¶ 56.

As a result of the falsehoods, fabrications and bad faith by defendants, Isaiah spent 30 days in jail, appeared in Court at least 5 times and was accused of heinous crimes he never committed.

The defendants' motion to dismiss must be denied as the complaint states plausible claims for false arrest, malicious prosecution and others. Moreover, nearly all facts as to arguable probable cause/qualified immunity and probable cause are in dispute. The defendants' supporting case law also is misconstrued as is easily identified when reading the actual cases.

Since facts are in dispute as to the lack of arguable or probable cause, a motion on the pleadings is inappropriate. Instead, such questions are to be determined by a jury at trial. The defendants must turn over the evidence that was withheld during the criminal prosecution in this civil rights suit and allow a jury to decide the case.

## STATEMENT OF FACTS

### The Shooting Investigation

On October 23, 2021, the defendants began to investigate a shooting that occurred that day at 9:59 p.m. at 2946 West 23rd Street, Brooklyn, New York. AC ¶ 14. The location is a large apartment building with many residents. During their investigation they allegedly recovered numerous shell casings allegedly near the premises. They also allegedly uncovered video surveillance depicting the incident.

The video footage allegedly depicted a person running into 2946 West 23rd Street as he was being shot at by a gunman. The video footage then allegedly shows a person exit 2946 West 23rd Street, point an unknown object and that a flash of light then emanated from the object.

These facts are derived from the defendants' criminal complaint. Isaiah and his attorneys have never seen the supposed video. Isaiah was not involved in this shooting and denies any involvement. AC ¶ 45. Defendants falsely provided statements and evidence accusing him of the shooting. AC ¶ 15.

### The False Arrest

On November 8, 2021, Isaiah walked out of his apartment and was still in the walkway leading to the street when he was confronted by numerous members of the New York City Police Department. AC ¶¶ 29-30 Defendant Devon Moses immediately arrested Isaiah. *Id*. At the time of the arrest Isaiah was not committing any crimes and the police lacked any reasonable suspicion, arguable or actual probable cause that he was engaged in a crime while he walked out of his apartment. AC ¶ 31.

There was no arrest warrant, search warrant or probable cause for the arrest. According to the arrest report, Isaiah was booked for possession of a controlled substance. AC ¶ 34. The arrest report also claimed the recovery of the controlled substance was pursuant to a search conducted after the arrest. The arrest itself was not claimed to be related to the controlled substances.

Isaiah would then be shuffled around to three different precincts, never being told what he was arrested or charged with. AC ¶¶ 35-38. Never being questioned in an interrogation room. During the various car rides, defendant Moses stated to Isaiah "Once I get you in cuffs, everything is over baby," and "Without you I wouldn't have a job." AC ¶ 38.

**The Malicious Prosecution**

On November 9, 2021, the defendants memorialized their false and perjurious statements and identifications on a felony complaint charging plaintiff with attempted murder in the second degree, attempted assault in the first degree, criminal use of a firearm in the first degree, possession of controlled substances, and criminal possession of a weapon. AC ¶¶ 43-46. The felony complaint, which was sworn to under oath was false and the defendants knew it was false when they made it. *Id.*

A Grand Jury was then empaneled, and the defendants continued to make false, perjurious and fabricated statements during the proceedings. AC ¶ 49. Under New York State law, a Grand Jury must return a true bill within 5 days or the accused is to be released. Here, it took the prosecutor 21 days to secure an indictment, and not even on the top charges. As such, the prosecutor had to make an application to the assigned judge asking to keep Isaiah detained while the proceedings continued. This would again be based on the false, perjurious and fabricated statements and evidence of the defendants.

**The Grand Jury Refuses to Indict on the Top Charges**

On November 30, 2021, the Grand Jury did not return an indictment as to Attempted Murder in the Second Degree, Criminal use of a Firearm in the First Degree, Attempted Assault in the First Degree nor Criminal Possession of a Controlled Substance in the Seventh Degree. AC ¶ 50. It is unlikely that the prosecutor did not submit these charges to the Grand Jury, as typically all charges on the felony complaint are submitted. The Grand Jury voted no true bill on these charges.

The Grand Jury only indicted Isaiah on Criminal Possession of a Weapon in the Second Degree and Criminal Possession of a Firearm charges.

On December 28, 2021 Isaiah was arraigned on the partial indictment. Within fifteen days of the arraignment the prosecutor was obligated to provide initial discovery, including any identification notices. This was not exchanged. Within thirty-five days of the arraignment the prosecutor was obligated to provide Grand Jury discovery, including minutes, evidence, quorum and voting. This was not exchanged. Within forty-five days of the arraignment the prosecutor was obligated to provide all discovery it intended to rely upon at trial, including physical evidence and video footage. This was not exchanged. The prosecutor was also obligated to state readiness for trial within 180 days of the arraignment by filing a certificate of compliance and statement of readiness. This was not done.

**The Criminal Case is Dismissed in its Entirety**

As such, on June 8, 2022 the indictment was dismissed by the court. AC ¶ 56. This would coincide with the date of the arrest, but was dismissed early as the clock would technically begin from the date of the indictment. However, since the prosecutor did not secure an indictment on all felony charges, the felony charges still remaining in the felony complaint from the November 9, 2021 charging document had to be dismissed pursuant to New York law. The prosecutor did not attempt to convert that felony complaint to a sworn charging document with a supporting deposition as it had every right to do.

## ARGUMENT

I.  **PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR FALSE ARREST AS THERE WAS NEITHER ARGUABLE NOR ACTUAL PROBABLE CAUSE FOR THE ARREST AND THE FACTS ARE OTHERWISE IN DISPUTE**

**A.  Probable Cause is in Dispute**

It is established that "Probable cause is a mixed question of law and fact [such that] questions of historical fact regarding an officer's knowledge at the time of the arrest are to be resolved by the jury." *Dufort v City of New York*, 874 F.3d 338, 348 (2d Cir. 2017). In other words, "The question of whether there was probable cause may be determined as a matter of law if there is no dispute as the pertinent events and knowledge of the officers or may require a trial if the facts are in dispute." *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) (*citing Moore v Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994)).

"Probable cause requires more than suspicions, even reasonable ones. Police do not have particularized probable cause to make an arrest simply because a suspect has suspicious acquaintances or happens to be at the scene of a crime…[or where] the crime occurs in a crowded public place." *Dufort*, 874 F.3d at 350.

The only issue in dispute as to the claims for false arrest, as conceded by the defendants is whether the "confinement was not otherwise privileged." The AC otherwise plausibly establishes the elements of false arrest. That "(1) defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021).

## B. Defendants are not Entitled to Qualified Immunity as a Matter of Law

Here, the AC set forth plausible facts showing that the defendants lacked arguable or actual probable cause, rendering the arrest not privileged. "For arguable probable cause, the arresting officer must demonstrate that it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree whether the probable cause test was met." *Garcia v. Doe*, 729 F.3d 84, 92 (2d Cir. 2015).

The AC sets forth facts, which if believed along with all reasonable inferences viewed in plaintiff's favor that it was not objectively reasonable for the defendants to believe probable cause existed and that officers could not disagree as to the lack of probable cause.

First, Isaiah specifically denies being involved in the October 23, 2021 shooting. Second, in the AC the plaintiff states that the defendants "provided and caused to be provided and generated false, misleading and inconsistent information." Third, the AC sets forth that the plaintiff was arrested without a warrant on the sidewalk in front of his apartment while he was not suspected of committing any crimes.

The plaintiff was arrested falsely on the shooting accusation but was initially only booked on possession of a controlled substance. Contraband which was only unlawfully recovered after the false arrest.

Crucially, the AC explains that not a single piece of evidence, proof or Grand Jury material was exchanged during the underlying criminal prosecution. As such in the AC the plaintiff justifiably questions whether such supposed evidence even existed at all. At minimum factual disputes exist as to the facts supporting any arguable or actual probable cause.

## C. The Fellow Officer Rule Does not Apply as Facts are in Dispute

The defendants' reliance on the imputation of knowledge rule is wrong as "The fellow officer rule is typically invoked in cases where the record is clear as to what the officer…reported." *McKinley v. Crevatas*, 2023 U.S. Dist. LEXIS 115544, (S.D.N.Y. Jul. 6, 2023) (Failla, D.J.) (*citing Jackson v. City of New York,* 939 F. Supp. 2d 235, 256 (E.D.N.Y. 2013) (Kuntz, D.J.)).

The defendants have not submitted any evidence to demonstrate what the officers reported to each other. This is unacceptable as the defendants (1) were provided with a N.Y. C.P.L. 160.50 unsealing authorizations and have obtained the relevant police and prosecutor files and (2) the AC relies upon the allegations made in the defendants' own charging documents allowing them to submit such evidence on their Rule 12(b)(6) motion but have chosen not to do so.

In *McKinley*, the district court explained that "The arresting officer's theory of probable cause suffers from…a fatal flaw…it depends on [another officer] observing a drug exchange between Plaintiff and [another], or at least credibly describing such exchange…[thus] a jury will have to decide what [the officer] witnessed [and] what he reported to the field team. Absent agreement between the parties on those details" a motion for dismissal cannot be granted.

**D. The Arrest was Invalid on its Face**

The defendants claim that Isaiah was arrested on an investigation card and therefore the arrest must have been valid. An I-card is issued by a police officer and is not subject to judicial review. However, the I-card was never produced and no evidence has been shown as to what the I-card was based on. The defendants thus claim that probable cause or arguable probable cause existed because they said so on an I-card relating to the shooting. However, the AC sets forth facts challenging any such probable cause determination.

The defendant's motion to dismiss is devoid of any arguments establishing arguable or actual probable cause as to any criminal offense. This is fatal to their motion to dismiss because "Courts evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it [and that] facts and circumstances [must be] sufficient to warrant a prudent man that the suspect had committed or was committing an offense." *Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996).

In *Ekeland v. Binns*, 2023 U.S. Dist. LEXIS 103588 (E.D.N.Y., Jun. 14, 2023) (Gonzalez, D.J.), the Court denied a motion to dismiss a false arrest case where the evidence needed to prove probable cause was not proffered by the defendants or not conceded by the plaintiff. There, a receipt of ownership of a device was necessary to support a claim for probable cause to believe criminal mischief was committed. Similarly, here, the defendants claim that a video and I-card are necessary to support their claims for probable cause. As such "the Court limit[ed] itself to the materials contained in the pleading…dr[ew] all reasonable inferences in favor of Plaintiff" and denied the motion to dismiss."

11

### E. Probable Cause was Lacking as to the Supposed Criminal Conduct and is Otherwise in Dispute

Here, there is no dispute that the defendants based their arrest and booked plaintiff solely for an alleged violation of Penal Law Section 220.03 for criminal possession of a controlled substance in the seventh degree. N.Y. P.L. 220.03 There is also no dispute that the defendants did not have any reason to believe the plaintiff possibly committed this crime until after he was arrested on the bogus I-card. The defendants admit "Probable cause also existed as Plaintiff was in possession of a controlled substance at the time of his arrest for the shooting."

The defendants' reliance on *Dowtin v. O'Neill*, 2019 U.S. Dist LEXIS 224600 (E.D.N.Y., Jan. 7, 2019) (Hall, D.J.), is misplaced. There the plaintiff was already subject to an order of protection and his ex-wife called the police to report a violation, for which an I-card was issued. There was no dispute as to what the I-card was issued for, the facts supporting the probable cause, i.e., the victim stating he called her and it was her voice, and no dispute as to the reasons for the arrest. The I-card itself was not dispositive but the facts surrounding it were. Here, we do not even know what the I-card was for and what it was based on. Plaintiff was also booked on something else.

12

As to the controlled substance booking, defendants misapply *Wingate v. Gives*, 725 F. App'x 32 (2d Cir. 2018). There, the plaintiff was convicted of possessing a controlled substance, thereby creating a presumption of probable cause which was not rebut. It does not stand for the proposition that being arrested for contraband renders an otherwise unlawful arrest valid. Especially not where all charges are dismissed and no convictions resulted.

As to the shooting, plaintiff was accused of violating of Penal Law Sections 110/125.25(1), 265.09(1)(A), 110/120.10(1), 265.03(3) and 265.01-B(1) for attempted murder in the second degree, criminal use of a firearm in the first degree, attempted assault in the first degree, criminal possession of a weapon in the second degree and criminal possession of a firearm.

i.   <u>There was no Probable Cause for Attempted Murder, Attempted Assault Criminal Use of a Firearm or Possession of a Controlled Substance and the Grand Jury Voted No</u>

To establish probable cause or arguable probable cause the defendants had to have sufficient facts to suspect Isaiah had committed the above listed crimes. As to attempted murder in the second degree the following elements apply (1) with intent to cause the death of another (2) attempts to cause the death of another and that (3) Isaiah could be identified as the perpetrator.

First, Isaiah denies involvement in the shooting. Second, it is not clear that the supposed video footage exists, and if it did what it depicted. Third, it is not clear if the supposed identification by defendant Sanon was valid and what he actually saw and what his familiarity with Isaiah was. It is not clear what other evidence supported the element of intent. The Grand Jury voted no as to this charge, establishing the lack of any probable cause.

As to criminal use of a firearm in the first degree the following elements apply (1) commission of a class B violent felony offense such as attempted murder in the second degree or attempted assault in the first degree (2) possess a deadly weapon, if the weapon is a loaded weapon from which a shot, readily capable or producing death or other serious injury may be discharged." Again, Isaish denies involvement, the video has not been shown and it is unclear what is depicted, the identification is not clear and the defendant did not commit the requisite class B violent felonies. The Grand Jury also voted no to this charge, establishing the lack of probable cause.

As to attempted assault in the first degree the following elements apply (1) with intent to cause serious physical injury to another (2) attempts to cause such injury (3) by means of a deadly weapon. The defendants did not have sufficient probable cause for this offense and the Grand Jury voted no.

14

ii.    There was no Probable Cause for Criminal Possession of a Weapon or
       Firearm, and the Indictment was Later Dismissed

As to criminal possession of a weapon in the second degree the following elements apply (1) possess (2) any loaded firearm. The defendants did not have sufficient probable cause for this offense and the facts are in dispute. Isaiah denies such possession and involvement and no evidence was produced to support the claims. The Grand Jury's indictment on this charge was later dismissed.

As to criminal possession of a firearm the following elements apply (1) possess (2) any firearm (3) knowingly fails to register such firearm. The defendants did not have sufficient probable cause for this offense and the facts are in dispute. Isaiah denies such possession and involvement and no evidence was produced to support the claims. The Grand Jury's indictment on this charge was later dismissed.

All of the supposed offenses the defendants would base their probable cause upon can only be established via the alleged video footage. The video was never produced in the underlying criminal prosecution and it is unclear if it exists. If the video does exist it is not clear what it depicts. It is further unclear as to the validity of the identification. The AC sets forth facts that the officers lied, perjured themselves and fabricated evidence to secure probable cause. As such, the motion to dismiss the false arrest claim must be denied.

II.   **PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR MALICIOUS PROSECUTION AS THE GRAND JURY'S REFUSAL TO INDICT ON THE TOP CHARGES DEFEATS ANY CLAIM OF PROBABLE CAUSE AND THE AMENDED COMPLAINT SETS FORTH FACTS TO REBUT ANY PRESUMPTION OF PROBABLE CAUSE AS TO ALL OTHER CRIMES FOR WHICH PLAINTIFF WAS PROSECUTED**

**A. Defendants Lacked Probable Cause to Prosecute Plaintiff**

"The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *McKinley*, 2023 U.S. Dist. LEXIS 115544 (*quoting Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). "Probable cause to prosecute should not be conflated with probable cause to arrest [as] probable cause must be shown as to each crime charged in the underlying criminal action" for defendant to prevail on a motion to dismiss. *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).

"Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *McKinley*, 2023 U.S. Dist. LEXIS 115544 (*quoting Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). In doing so the "Court must separately analyze each charge claimed to have been maliciously prosecuted." *McKinley*, 2023 U.S. Dist. LEXIS 115544 (*quoting Morris v. Silvestre*, 604 F. App'x 22, 25 (2d Cir. 2015).

The defendants do not make any argument as to the existence of probable cause to prosecute as to any of the criminal charges. This is fatal to their motion. The defendants' merely claim that a grand jury indictment is all that is necessary to defeat a malicious prosecution claim. They are wrong. The AC does set forth facts that he defendants lied, perjured themselves and submitted false evidence to the grand jury. The AC also shows that four crimes charged in the felony complaint were not indicted upon. Any presumption of probable cause created by the partial indictment on some charges, has been rebutted or is otherwise in dispute, requiring denial of the motion at this stage of the litigation.

The only issues in dispute as conceded by the defendants as to the elements of malicious prosecution are (1) whether there was any probable cause to prosecute and (2) whether the prosecution was instituted with malice. There is no dispute as to initiation of proceedings or favorable termination as to plaintiff.

## B. The Prosecution of Plaintiff was with Malice and an Inference of Malice is Raised by the Lack of Probable Cause

"Malice does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth*, 82 F.3d at 563. "The lack of probable cause...tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." *Id.*

17

As explained above in the false arrest section, there was no probable cause to arrest plaintiff for the charges of attempted murder in the second degree, criminal use of a firearm in the first degree, attempted assault in the second degree, criminal possession of a weapon in the second degree, criminal possession of a firearm, or criminal possession of a controlled substance in the seventh degree. The standard for probable cause to prosecute is higher, making it impossible for defendants to meet this burden as the arrest was invalid.

**C.  The Grand Jury's Refusal to Indict on Attempted Murder, Criminal Use of a Firearm, Attempted Assault and Possession of a Controlled Substance Evidences the Complete Lack of Probable Cause and Demonstrates Malice**

Here, the Grand Jury specifically did not indict on the attempted murder, use of a firearm, attempted assault or controlled substance charges, further solidifying the lack of probable cause to prosecute on those charges. The other weapons possession charges for which defendant was indicted on were otherwise dismissed, showing a lack of probable cause from the outset. The facts in the AC rebut any presumption of probable cause as to the indicted charges, and the facts are otherwise in dispute. The complaint sets forth facts that "the defendant distorted the process by which the plaintiff was brought to trial" on the indicted charges. *Josie v. City of New York*, 2023 U.S. Dist. LEXIS 95687 (E.D.N.Y. 2023) (Ross, D.J.).

Here, the AC plausibly alleges the lack of probable cause to prosecute, actual malice and an inference of malice from the lack of probable cause. As the AC states "Defendants…provided…false statements and identifications to the Kings County District Attorney's Office…knowing there was no basis to support the allegations and identifications…The plaintiff was not involved in a shooting on October 23, 2021 and the defendants knew that he was not involved, but made the false statements anyway because the incident allegedly occurred in front of plaintiff's apartment building and because plaintiff had run ins with the law previously." In other words, the defendants profiled and targeted plaintiff with no basis just because he lived near where the incident occurred and had prior law enforcement trouble.

In *Kee*, the Second Circuit explained it had to deny a motion to dismiss malicious prosecution claims because when crediting plaintiff's facts and raising all inferences in his favor "a rational jury could find that probable cause to prosecute…was lacking." 12 F.4th at 150.

III.   **PLAINTIFF'S AMENDED COMPLAINT SETS FORTH PLAUSIBLE CLAIMS FOR A DENIAL OF A FAIR TRIAL AS THE DEFENDANTS PROVIDED FALSE TESTIMONY AND FABRICATED EVIDENCE REGARDLESS AS TO WHETHER THERE WAS ARGUABLE OR ACTUAL PROBABLE CAUSE**

**A. Defendants Denied Plaintiff a Fair Trial**

"Fabricated evidence [for the purposes of a denial of a fair trial claim] can include an officer's own (false) account of his or her observations of alleged criminal activity, including statements made in a criminal charging instrument." *McKinley*, 2023 U.S. Dist. LEXIS 115544  (*quoting Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016); *Ashley v. City of New York*, 992 F.3d 128, 138 (2d Cir. 2021)).

Here, the AC explains that the defendants "provided and caused to be provided…false…information to accuse plaintiff of shooting a firearm." That "The accusation was made on the basis of false allegations and identifications." That "The alleged video footage did not depict plaintiff despite the false statements by the defendants to the contrary." That "Defendants provided the false statements and identifications to the Kings County District Attorney's Office." That the partial indictment was secured "Pursuant to these false statements, false information, false identifications and fabricated evidence."

These facts plausibly set forth denial of fair trial claims, especially where the Grand Jury voted no on the top counts and the remaining counts are later dismissed. In any event, whether the statements were in fact fabricated and false is a jury question that is in dispute and cannot be determined on this motion. It appears that the defendants just refiled their memorandum of law in response to the amended complaint without addressing the additional facts.

**B. Plaintiff Withdraws his Claims for Failure to Intervene, Supervisory Liability Conspiracy and Municipal Liability/Monell Claim**

Plaintiff hereby withdraws his claims for failure to intervene, supervisory liability, conspiracy, and municipal liability/Monell claims and consents to their partial dismissal from this matter. This is without prejudice to all remaining claims.

**IV. THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER ALL NEW YORK STATE LAW CLAIMS WHEN DENYING THE DEFENDANT'S MOTION TO DISMISS**

The defendants argue that should all federal claims be dismissed that the state law claims not be entertained in federal court. If this were to happen, any state law claims must be dismissed without prejudice to refile in the appropriate venue. However, as explained above, the federal claims for false arrest, malicious prosecution and denial of a fair trial are not subject to dismissal.

## **<u>CONCLUSION</u>**

The defendants' motion to dismiss must be denied as to the false arrest, malicious prosecution, denial of a fair trial and all state law claims under the first, second, third, seventh, ninth, and tenth through fourteenth causes of action. The defendants did not move to dismiss the ninth cause of action for unlawful search and seizure in violation of the Fourth Amendment and that claim should also survive the motion to dismiss. The plaintiff consents to the withdrawal of the claims for failure to intervene, supervisory liability, conspiracy and the municipal liability/Monell claims under the fourth, fifth, sixth, and eighth causes of action.