```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ISAIAH SANO,                                    :
                                                :
                          Plaintiff,            :
                                                :               OPINION AND ORDER
              -against-                         :               22-cv-7688 (DLI)(TAM)
                                                :
THE CITY OF NEW YORK, POLICE OFFICER            :
DEVON D MOSES, POLICE OFFICER PATRICK           :
SANON, and DETECTIVE BRIAN FLY,                 :
                                                :
                          Defendants.           :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Isaiah Sano ("Plaintiff") initially filed a complaint on December 17, 2022 against New York City Police Department Officers Devon D. Moses, Patrick Sanon, and Brian P. Flynn (collectively, the "Officer Defendants") and the City of New York (together with the Officer Defendants, "Defendants"). *See*, Compl., Dkt. Entry No. 1. Defendants responded by filing a motion to dismiss. *See*, Mem. Supp. Defs.' Mot. Dismiss, Dkt. Entry No. 18. In response, Plaintiff filed an Amended Complaint on June 21, 2023, alleging violations of Sections 1983, 1985, and 1988 of Title 42 of the United States Code, and the Fourth, Fifth, and Fourteenth Amendments. *See*, Am. Compl., Dkt. Entry No. 19. The Amended Complaint also alleges a series of violations under New York law. *Id*.

In response to the Amended Complaint, Defendants filed a second motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). *See, e.g.*, Mem. Supp. Defs.' Second Mot. Dismiss ("Mot."), Dkt. Entry No. 22. Plaintiff partially opposed the motion and consents to the dismissal of some claims. *See*, Pl.'s Opp'n Mot. ("Opp'n"), Dkt. Entry

No. 24.  Defendants replied.  *See*, Reply Supp. Mot. ("Reply"), Dkt. Entry No. 27.  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

On October 23, 2021, a shooting occurred in front of Plaintiff's apartment building.  *See*, Am. Compl. ¶¶ 14, 45, 61.  Officers Sanon and Flynn, who investigated the shooting, provided a false statement accusing Plaintiff of shooting a firearm from his apartment based on alleged video footage of the event.  *Id.* ¶¶ 14-16, 19, 61.  Plaintiff alleges that these officers knew the statement was false when they made it because he was not the person in the video.  *Id.* ¶¶ 16-17, 19; *See also*, Am. Compl. ¶ 47 (alleging that Officer Moses also "supplied" the false allegations).  Plaintiff asserts that Defendants made the false statements "because the [shooting] allegedly occurred in front of [his] apartment building and . . . [he] had run ins with the law previously."  *Id.* ¶ 45.

Plaintiff further alleges that, on November 8, 2021, the Officer Defendants arrested Plaintiff without probable cause as he exited his apartment building.  *Id.* ¶¶ 28-31.  After his arrest, the Officer Defendants discovered drug related contraband on Plaintiff's person and brought him to three different police precincts for questioning.  *Id.* ¶¶ 33, 35-37, 39.  Plaintiff was strip searched at the first precinct and questioned at each precinct.  *Id.* ¶¶ 35-37, 39.  The Officer Defendants did not inform Plaintiff of his rights or why he was being arrested.  *Id.* ¶¶ 32, 35-36, 40.  At one point, while in transit, one of the Officer Defendants stated to Plaintiff, "[o]nce I get you in cuffs, everything is over baby . . . [.]  Without you, I wouldn't have a job," and then proceeded to play the song "Country Grammar" by Nelly at full volume.  *Id.* ¶ 38.  In their arrest report, the Officer Defendants noted that Plaintiff's arrest was not for his alleged involvement in the October 23, 2021

---

[1] The following facts are taken from the Amended Complaint, which are accepted as true in deciding this motion. *See*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (citations omitted).

shooting as the officers falsely claimed, but upon his possession of drug related contraband. *Id.* ¶¶ 33-34, 61.

The Officer Defendants then provided the false statements to the prosecutor's office and the court. *Id.* ¶ 43. A felony complaint was issued the following day, November 9, 2021, upon which Plaintiff was arraigned on charges of attempted murder in the second degree and "numerous firearm possession charges," including criminal possession of a weapon in the second degree, and ordered held in custody in Rikers Island for approximately thirty (30) days. *Id.* ¶¶ 45-48, 61.

However, Plaintiff was indicted only on "numerous weapons possession charges." *Id.* ¶ 50. He was not indicted for attempted murder, attempted assault, or the contraband charge that served as the purported reason for his November 8, 2021 arrest. *Id.* ¶¶ 50, 61. Plaintiff alleges the "indictment was based on [Defendants'] lies, fraud and falsehoods." *Id.* ¶ 53. Eventually, on June 8, 2022, the indictment was dismissed. *Id.* ¶ 56. Other than body camera footage from the November 8, 2021 arrest, Defendants did not turn over any evidence to the defense, including, for example, the video of the October 23, 2021 shooting, materials from the grand jury, exculpatory material, or any relevant investigation card (or "I-Card").[2] *Id.* ¶¶ 20-27, 56, 61.

Based on those allegations, Plaintiff asserts claims against Defendants for: (1) false arrest and unlawful imprisonment[3]; (2) violations of his right to a fair trial; (3) malicious prosecution; (4) failure to intervene; (5) supervisory liability; (6) municipal liability; (7) conspiracy; (8)

---

[2] "An I-card is a tool used frequently by the [NYPD] to arrest a suspect who has an open complaint pending against him in lieu of an arrest warrant signed by a judge after charges have been signed." *Dowtin v. O'Neill*, 2019 WL 7496574, at *1 (E.D.N.Y. Jan. 7, 2019) (citation and internal quotation marks omitted); *See also*, *United States v. Esters*, 2022 WL 16715891, at *2 n.4 (E.D.N.Y. Nov. 4, 2022) ("I-Cards are 'an internal NYPD form issued by an officer when there is a suspect, witness, or perpetrator to be investigated.'" (citation omitted)).

[3] As Plaintiff asserted false arrest and unlawful imprisonment as a single claim, and such claims "are subject to the same analysis," the Court will treat them as single claim in deciding this motion. *Seitz v. DeQuarto*, 777 F. Supp.2d 492, 501 (S.D.N.Y. 2011) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir.1995)); *See also*, *Hargroves v. City of New York*, 411 F. App'x 378, 382 (2d Cir. 2011) ("False arrest 'is a species of false imprisonment,'" so both claims are subject to the same legal analysis for purposes of this order.'" (quoting *Singer*, 63 F.3d at 118)).

3

unlawful search and seizure; (9) negligent hiring retention and training; (10) negligence; and (11) intentional infliction of emotional distress. *Id.* ¶¶ 63-150. Defendants move to dismiss the Amended Complaint for failure to state a claim, except as to the unlawful search and seizure claim and certain state law claims, claiming the Court should decline to exercise supplemental jurisdiction. *See, generally*, Mot.; *See also*, Opp'n at 17 (arguing that the Fourth Amendment claim should "survive" because Defendants "did not move to dismiss [it]"). While opposing the motion, Plaintiff does not oppose dismissal and withdraws the failure to intervene, supervisory liability, conspiracy, and municipal liability claims. Opp'n at 17. Therefore, the Court need address only the plausibility of Plaintiff's false arrest, fair trial, and malicious prosecution claims.

Defendants contend that Plaintiff's false arrest and malicious prosecution claims fail because his arrest was based on probable cause. Mot. at 4-8. Defendants further maintain that, even if probable cause "was somehow lacking," "arguable" probable cause existed for Plaintiff's arrest, entitling them to qualified immunity. *Id.* at 6-7. Defendants additionally argue that Plaintiff's right to a fair trial claim fails because the Amended Complaint does not plead adequately that Defendants knowingly fabricated evidence. *Id.* at 8-9.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

In deciding this motion to dismiss pursuant to Rule 12(b)(6), the Court must accept, as true, all well pled factual allegations and draw all reasonable inferences in Plaintiff's favor. *LaFaro v.*

4

*N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). The Court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## DISCUSSION

### I. False Arrest Claims

Defendants seek dismissal of Plaintiff's false arrest claims brought pursuant to Section 1983 and state law. *See*, Mot. at 4-7. "A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Indeed, in analyzing a Section 1983 false arrest claim, courts "look to the law of the state in which the arrest occurred." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) (citation omitted). To state a false arrest claim under New York law, Plaintiff must allege sufficient facts showing that: (1) Defendants "intended to confine him"; (2) he "was conscious of the confinement"; (3) he "did not consent to the confinement"; and (4) "the confinement was not otherwise privileged." *Id*. (internal quotation marks and citation omitted). An arrest is privileged if it is based on probable cause. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) ("If probable cause existed, . . . [an] officer would be privileged to make an arrest.").

Here, only the final element is at issue. According to Defendants, two features of the arrest suggest the existence of probable cause: (1) before his arrest, the NYPD had issued an "I-Card"

5

for Plaintiff related to the shooting; and (2) after his arrest, the police found him in possession of a controlled substance.  *See*, Mot. at 4-6.  Probable cause for an arrest exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2010) (citation and internal quotation marks omitted).  The existence of probable cause is determined from "the totality of the circumstances . . . based on 'a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.'" *Guan*, 37 F.4th at 804 (citations omitted).  Additionally, the Court should consider only "those facts available to the officer at the time of the arrest and immediately before it."  *Id.* (citation and internal quotation marks omitted).

Alternatively, Defendants contend that the Officer Defendants are entitled to qualified immunity "even if probable cause was somehow lacking . . . [because] there was still, at a minimum, arguable probable cause to arrest Plaintiff." Mot. at 6.  "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In the false arrest context, "[a]n officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (citations and internal quotation marks

6

omitted). Plaintiff counters that there was no arguable or actual probable cause for the arrest based on either the alleged I-Card or the contraband discovered after the arrest. Opp'n at 7-11.

### A.  Alleged Outstanding I-Card for Plaintiff

At this stage, Defendants' contention that the existence of an I-Card alone sufficiently establishes probable cause does not justify dismissal of the false arrest claims. As previously noted, "in determining whether a complaint states a claim, the [C]ourt is required to make the assessment based solely on the allegations in the complaint, without considering extraneous facts and materials." *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025); *See also*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (stating that a court may, on a Rule 12(b)(6) or 12(c) motion, "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

Here, without any factual support, Defendants assert that "Plaintiff was arrested on November 5, 2021 for his participation in a shooting based upon an outstanding NYPD 'i-card.'" Mot. at 5 (citing Am. Compl. ¶¶ 30, 40, 61); *See also*, Reply at 1 (citing Am. Compl. ¶¶ 30, 33-34, 40, 61). Defendants neither have attached a copy of the relevant I-Card to their motion nor requested that the Court take judicial notice of the I-Card's alleged existence or legal effect. Instead, they rely on the allegations in the Amended Complaint. However, none of the paragraphs they cite allege that the Officer Defendants arrested Plaintiff based on an I-Card. Instead, the Amended Complaint states that Plaintiff never was advised that "he was arrested pursuant to an investigation card." Am. Compl. ¶ 40. Moreover, Plaintiff alleges that Defendants failed to produce an I-Card in discovery during the local criminal proceeding and that the "Alerts Sheet attached to [his] unlawful arraignment [sic]" fails to identify the alleged I-Card. *Id.* ¶¶ 26, 41-42. Finally, Plaintiff explicitly alleges that his arrest was made based on the Officer Defendants' false

7

statements purportedly identifying him in the video depicting the October 23, 2021 shooting. *Id.* ¶¶ 30-33, 61.

As the Amended Complaint does not allege the existence of the purported I-Card and Defendants have not submitted extraneous materials that the Court may consider at this stage, Defendants' motion is denied on this ground.

> **B.    Plaintiff's Possession of a Controlled Substance**

Defendants' argument that they had probable cause to arrest Plaintiff based on his possession of a controlled substance at the time of his arrest fares no better. In support of their motion, Defendants merely quoted language from a Second Circuit case, which they failed to analyze and apply to this matter. *See*, Mot. at 6 (citing *Wingate v. Gives*, 725 F. App'x 32 (2d Cir. 2018) (summary order)). For his part, Plaintiff urges the Court not to read *Wingate* as "stand[ing] for the proposition that being arrested for contraband renders an otherwise unlawful arrest valid." Opp'n at 13. The Court finds *Wingate* is inapposite.

In *Wingate*, the plaintiff asserted, *inter alia*, a Section 1983 false arrest claim involving a criminal charge for possession of a controlled substance that later was dismissed. 725 F. App'x at 34. In affirming the district court's order granting summary judgment in favor of the defendants, the circuit held that the false arrest claim "failed because [the] defendants had probable cause to arrest and prosecute [Wingate] for possession of a controlled substance because it is undisputed that [he] was in possession of two crack pipes at the time of his arrest." *Id.* at 36. However, neither the circuit's opinion in *Wingate* nor Defendants' motion papers contain any factual discussion regarding the officers' probable cause determination as to the arrest or the timing of Wingate's detention. *Id.* at 35-36. Notably, before the district court, Wingate did not argue that the evidence allegedly supporting probable cause to arrest him was obtained unlawfully. *See*, S.D.N.Y. Civ. No. 05-cv-01872, Dkt. Entry No. 143, Feb. 22, 2011 R. & R. at 20 (arguing, instead, that the

8

officers who signed the arrest paperwork lacked knowledge of the underlying facts because they did not participate in the arrest). On the record presented in *Wingate*, the Second Circuit concurred with both the magistrate and district judges that there was sufficient probable cause for Wingate's arrest.

Such is not the case here. Relying on *Wingate*, Defendants seem to contend that their subsequent discovery of illegal contraband, even if unlawfully seized, supplies the requisite probable cause to defeat Plaintiff's false arrest claim. "It is true, as [] [D]efendants suggest, that . . . an arrest is not rendered 'false' solely because the evidence providing probable cause for such arrest was uncovered as a result of an illegal seizure and search." *Lust v. Joyce*, 2007 WL 3353214, at *2 (N.D.N.Y. Nov. 9, 2007) (citing *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999)). In the criminal context, "the fruit of the poisonous tree doctrine" serves to "exclude[] evidence obtained from or as a consequence of lawless official acts." *Townes*, 176 F.3d at 145 (citations and quotation marks omitted). However, "this evidentiary doctrine is inapplicable to civil § 1983 actions." *Id.* at 145-46 (citation omitted).

In *Townes*, a plaintiff brought a Section 1983 claim for a violation of his Fourth Amendment right to be free from an unreasonable search and seizure arising from a "police stop of a taxicab in which he was a passenger." *Id.* at 141-42, 145 (noting that Townes was arrested upon the discovery of weapons in the taxicab but only after he was unlawfully stopped and searched). The Second Circuit held that the "unconstitutional seizure and search . . . was not a proximate cause of his conviction because . . . the trial court's refusal to suppress the evidence[] . . . [was] an intervening and superseding cause of Townes's conviction." *Id.* at 146. The circuit also found that "Townes is foreclosed from recovery . . . [because] the injury he pleads (a violation of his Fourth Amendment right to be free from unreasonable searches and seizures) does not fit

9

the damages he seeks (compensation for his conviction and incarceration)." *Id.* at 147-49 (stating that the sought damages were compensable only through a malicious prosecution claim).

While Townes did not assert a false arrest claim, the circuit nevertheless held that he could not "recover compensatory damages for his arrest and pre-arraignment detention" based on a false arrest or imprisonment theory. *Id.* It reasoned that, while the officers "lacked probable cause to stop and search Townes, [] they certainly had probable cause to arrest him upon discovery of the handguns in the passenger compartment of the taxicab in which he was riding." *Id.* ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest . . . ."). Here, the Officer Defendants undisputedly discovered illegal contraband in Plaintiff's possession and had probable cause to arrest Plaintiff upon that discovery. Therefore, as to his Section 1983 false arrest claim, Plaintiff is unable to recover damages for the period of confinement from the undisputed discovery of the contraband "up until issuance of process or arraignment." *Id*.

However, under existing Second Circuit law, Plaintiff's federal false arrest claim survives. Notably, unlike in *Townes*, Plaintiff alleges that his arrest occurred before the discovery of the contraband. *See*, Am. Compl. ¶¶ 28-31, 33-34. "[A] claim for false arrest may be stated for that finite period of time in between an initial detention which was unsupported by probable cause, and the subsequent discovery of evidence providing probable cause for an arrest." *Lust*, 2007 WL 3353214, at *2 (citing *Gonzalez v. City of Schenectady*, 2001 WL 1217224, *5 (N.D.N.Y. Sept. 17, 2001) (finding that the plaintiff "assert[ed] cognizable false arrest claims for the period of time between initial contact with the police and the point where the marijuana was discovered")); *Drayton v. City of New York*, 2022 WL 16948769, at *3 (E.D.N.Y. Nov. 15, 2022) (finding, in a case where the police officers "did not find drugs on [the] plaintiff until after they arrested him," that the plaintiff "was wrongfully in custody for somewhere between 3 and 30 minutes," from the

10

point of his arrest to the discovery of the drugs (citing *Townes*, 176 F.3d at 149)); *Jenkins v. N.Y.C. Police Dep't*, 2015 WL 4660899, at *4 (S.D.N.Y. Aug. 6, 2015) ("Courts considering *Townes* have since found that plaintiffs may recover damages from a false arrest subsequently supported by probable cause, where such damages are limited to the period between the arrest and the acquisition of probable cause." (citations omitted)); *Cf.*, *Townes*, 176 F.3d at 149 (recognizing that Townes could have asserted a "damage claim . . . limited to the brief invasion of privacy related to the seizure and initial search of his person"); *Morgan v. City of New York*, 2014 WL 3407714, at *5 (E.D.N.Y. July 10, 2014) ("[B]ecause probable cause existed once the knife was found on Plaintiff's person, Plaintiff may only seek recovery for damages that accrued from the time of the stop until the moment that the knife was found." (citations omitted)).

As in those cases, Plaintiff alleges that Defendants unlawfully arrested and detained him based on false statements without any reason to believe he possessed any controlled substance before then as the drug related evidence was found on him after the arrest.  See, Am. Compl. ¶¶ 30, 33, 61.  Therefore, considering only "those facts available to the officer at the time of the arrest and immediately before it," as alleged in the Amended Complaint, Plaintiff has pled sufficient plausible facts establishing each of the elements of his federal false arrest claim and, specifically, that the confinement was not privileged, *i.e.*, because the Officer Defendants lacked probable cause to arrest him from the period of the initial detention to the discovery of the illegal contraband. *Guan*, 37 F.4th at 804 (citation and internal quotation marks omitted)).

As for their qualified immunity defense, Defendants have failed to show that the Officer Defendants had "arguable" probable cause to arrest Plaintiff.  As with probable cause, "arguable" probable cause is judged on the facts and circumstances known to an officer at the time of arrest. *Zellner*, 494 F.3d at 370 (citations omitted).  As Plaintiff alleges that the Officer Defendants

11

arrested Plaintiff "without a warrant and without probable cause," "the right at issue . . . , the right not to be subjected to a warrantless arrest without probable cause[,] was clearly established." *Id*. at 367 (citations omitted). Thus, the relevant question "is whether it was objectively reasonable for the officers to believe they did have probable cause." *Id.* at 369 (noting that the circuit has "[r]eferr[ed] to this standard as 'arguable' probable cause"); See also, *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) ("Arguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.'" (alteration in original) (citation omitted)). "[I]f, on an objective basis, it is obvious that no reasonably competent officer would [] conclude[] that probable cause existed, [the Officer] [D]efendants will not be immune . . . ." *Zellner*, 494 F.3d at 367 (citation and internal quotation marks omitted).

Here, Plaintiff alleges that the Officer Defendants arrested him despite knowing, based on alleged video footage of the shooting, that the accusation he had discharged a firearm from his apartment was false. *See*, Am. Compl. ¶¶ 14-16, 19, 28-31, 45, 47, 49, 61. Moreover, accepting Plaintiff's allegations as true and construing them in the light most favorable to him, the Officer Defendants did so without having any reasonably trustworthy information or reasonable belief that Plaintiff possessed illegal contraband or had committed another crime at the time of arrest. *See*, *generally*, Am. Compl. Therefore, at this juncture, Defendants have not shown they are entitled to qualified immunity because officers of reasonable competence would agree there was no probable cause to arrest Plaintiff before the discovery of the contraband. *See*, *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.").

12

Moreover, while "it is possible for a qualified immunity defense to succeed on a motion to dismiss, such a defense 'faces a formidable hurdle . . . and is usually not successful.'" *Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022), *cert. dismissed*, 143 S. Ct. 2694 (2023); *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." (citation omitted)). "Not only must the facts supporting the defense appear on the face of the complaint, but . . . the [Rule 12(b)(6)] motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citations omitted). At this stage, Defendants have not cleared this "formidable hurdle" to warrant granting qualified immunity.

Finally, the Court holds that the motion to dismiss the state false arrest claim should be denied for the same reasons. As previously noted, a federal false arrest claim "is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852. While "there is some ambiguity as to whether New York courts apply the same reasoning as *Townes*,"[4] Defendants did not address this distinction in their motion papers. *Hatcher v. City of New York*, 2018 WL 1583036, at *4 (S.D.N.Y. Mar. 27, 2018). Notwithstanding, even assuming the ambiguity remains unsettled, for the same reasons the Court stated in denying dismissal of Plaintiff's federal false arrest claim, the Court concludes that Defendants lacked "actual" and "arguable" probable cause to arrest Plaintiff, at least before the discovery of the illegal contraband. Accordingly, for all the

---

[4] Some courts find that, "[u]nder state law, . . . a civil defendant cannot raise a defense of probable cause to a false arrest claim if the arrest was the result of an initially unlawful search or seizure." *E.g.*, *Doe v. City of New York*, 2018 WL 3824133, at *4 (E.D.N.Y. Aug. 9, 2018) (citations omitted) (collecting cases). Others find that "[w]hatever ambiguity may exist," the existence of a 2001 New York Court of Appeals' decision "afford[s] at least the 'reasonable basis' necessary for qualified immunity with regard to the state claim . . . ." *E.g.*, *Cabral v. City of New York*, 662 F. App'x 11, 13 (2d Cir. 2016) (summary order) (citing *Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001)).

foregoing reasons, dismissal of Plaintiff's false arrest claims brought under federal and state law is denied.

**II.     Claim for a Violation of a Right to a Fair Trial**

Pursuant to Section 1983, Plaintiff alleges that Defendants violated his right to a fair trial by fabricating evidence and utilizing that evidence against him in legal proceedings. *See*, Am. Compl. ¶¶ 73-79. "A § 1983 plaintiff 'may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor.'" *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (citation omitted); *See also*, *Ashley v. City of New York*, 992 F.3d 128, 132, 132 n.1 (2d Cir. 2021) (adopting the term "fabricated-evidence claim" for a cause of action based on a violation of the "right to a fair trial based on fabricated evidence," and noting that the Second Circuit "has frequently referred to this claim as a 'fair trial claim'"). To plead this fair trial claim, Plaintiff must allege "that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result.'" *Barnes*, 68 F.4th at 128-29 (quoting *Ashley*, 992 F.3d at 138).

Defendants contend Plaintiff's fair trial claim fails because he has not alleged sufficiently that Officer Defendant Sanon "either knowingly lied or falsely identified [Plaintiff] on the surveillance [video]." Mot. at 9 (citations omitted). They argue that, because Plaintiff admits he has not seen the surveillance video, he could not know if Officer Defendant Sanon falsely identified him and, therefore, that his fabrication of evidence allegations are conclusory and insufficient to survive Rule 12(b)(6) dismissal. *Id.* (citing Am. Compl. ¶¶ 19, 21).

14

Plaintiff counters that "[f]abricated evidence can include an officer's own (false) account of his or her observations of alleged criminal activity, including statements made in a criminal charging instrument." Opp'n at 16 (citations omitted). He further argues that, contrary to Defendants' contentions, Defendants knowingly fabricated and forwarded evidence to the prosecutor that led to a prosecution and deprivation of his liberty. *Id.* (citing Am. Compl. ¶¶ 14-15, 19 (investigating officers fabricated evidence to support accusation and alleged identification of Plaintiff), ¶ 43 (fabricated evidence knowingly and intentionally provided to prosecutors), ¶ 50 (fabricated evidence leads to grand jury indictment)). Finally, Plaintiff asserts that the question of whether the statements were fabricated is question of fact that only may be resolved by the jury at trial. *Id.* at 17.

At this stage, the Court must ascertain whether the allegations set forth in the Amended Complaint, construed in the light most favorable to Plaintiff, sufficiently plead the fair trial claim. *See*, *Barnes*, 68 F. 4th at 128. In *Barnes*, the plaintiff was arrested, charged, and prosecuted, in part, for selling drugs. *Id*. at 126. In reversing the district court's dismissal of the fabricated evidence claim, the Second Circuit noted that the plaintiff met his pleading obligation when he alleged, in pertinent part, "that the Defendant Officers knowingly lied to the prosecutors in relaying that they witnessed [the plaintiff] sell drugs." *Id*. at 129. The Second Circuit observed that, "before discovery, it is unclear what other facts [the plaintiff] could be expected to allege in order to show that Defendants' conduct was knowing, as opposed to mistaken." *Id.* (citations omitted).

Here, too, it is unclear what other facts Plaintiff could allege to show that Officer Defendant Sanon's conduct was knowing and not mistaken. Plaintiff alleges that "[D]efendants knew their statements were false and inaccurate." Am. Compl. ¶ 28; *See also*, Am. Compl. ¶¶ 16-17, 31, 33-34, 43-45, 51 (alleging that Officer Defendants Sanon and Flynn knew there was no basis to: (1)

15

arrest Plaintiff; (2) support the false assertion that he shot a firearm from his apartment; or (3) provide the false statements to the prosecutors, court, and grand jury). The Amended Complaint also alleges that the Officer Defendants "provided and caused to be provided and generated false, misleading and inconsistent information to accuse [P]laintiff of shooting a firearm." *Id.* ¶ 14. These allegations, together with the allegation that "Plaintiff was eventually indicted on the basis of false allegations supplied by [D]efendants," sufficiently plead the first three elements of the fabricated evidence claim. Moreover, the allegation that Defendants knowingly gave "false statements and identifications" to the prosecuting office and the state criminal court satisfies the fourth element. *Id.* ¶ 43. Finally, Plaintiff's pretrial detention, 30-day confinement at Rikers Island, and indictment, which was dismissed with prejudice, are enough to prove that he suffered a deprivation of liberty, thus satisfying the fifth element of the claim. *Id.* ¶¶ 35-37, 48-50, 56; *See also*, *Barnes*, 68 F.4th at 129 (pretrial detention and prosecutions are deprivations of liberty).

Therefore, at this stage, Plaintiff has alleged sufficiently all elements necessary to state a claim for a violation of his right to a fair trial based on the claimed fabrication of evidence. Accordingly, the motion to dismiss this claim is denied.

### III.  Malicious Prosecution Claims

Finally, Defendants seek dismissal of Plaintiff's malicious prosecution claims brought under federal and state law. "To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (citations omitted); *See also*, *Ortiz v. Stambach*, ___ F.4th ___, 2025 WL 1350063, at *6 (2d Cir. May 9, 2025) ("Claims for malicious

16

prosecution brought under Section 1983 are substantially the same as claims for malicious prosecution brought under state law." (citation omitted)). Moreover, to state a Section 1983 claim, the plaintiff must plead plausible facts showing "a 'sufficient post-arraignment liberty restraint.'" *Kee*, 12 F.4th at 162 (citation omitted).

Defendants do not dispute that a criminal proceeding was commenced against Plaintiff, which was terminated in Plaintiff's favor, or that Plaintiff suffered a sufficient post-arraignment liberty restraint. *See*, Mot. at 7-8. Instead, they argue the existence of probable cause to prosecute barred the malicious prosecution claims. *Id.* Defendants correctly assert that the grand jury's indictment of Plaintiff creates a rebuttable presumption of probable cause. *See*, *Ortiz*, 2025 WL 1350063, at *6 (citation omitted). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* (citation omitted). It "should not be conflated with probable cause to arrest" because, for example, probable cause to prosecute "must be shown as to each crime charged in the underlying . . . action." *Kee*, 12 F.4th at 166 (citations omitted).

Instead of arguing that Defendants lacked probable cause to prosecute him, Plaintiff counters that his allegations rebut the presumption created by the grand jury indictment with "facts that [t]he defendants lied, perjured themselves and submitted false evidence to the grand jury." Opp'n at 14. That presumption "may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Ortiz*, 2025 WL 1350063, at *6 (citation and internal quotation marks omitted); *See also*, *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) ("[T]he 'intervening exercise of independent judgment' by a prosecutor to pursue the case usually breaks the 'chain of causation' [to sustain a malicious prosecution claim] unless the plaintiff can produce evidence that the

17

prosecutor was 'misled or pressured' by the police" (quoting *Townes*, 176 F.3d at 147)).  In rebutting that presumption, Plaintiff is "not require[d] . . . to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence."  *Ortiz*, 2025 WL 1350063, at *7 (stating that the "plaintiff may do so entirely through circumstantial evidence").

Defendants maintain that Plaintiff cannot overcome this presumption because he does not allege any non-conjectural facts that suggest "fraud or any other misconduct was perpetrated before the grand jury" or that show "any Defendant acted in bad faith in connection with the Grand Jury proceeding."  Mot. at 8; Reply at 3.  In response, Plaintiff asserts that his allegation that he was not indicted for possession of a controlled substance undermines any presumption created by the grand jury's indictment.  Opp'n at 14-15.  Plaintiff further argues that he plausibly alleged actual malice, which "does not have to be actual spite or hatred, but means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Id.* at 14 (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996)).

Here, the Amended Complaint adequately states a claim for malicious prosecution.  Specifically, it contains facts indicating that "the indictment was the product of . . . police conduct undertaken in bad faith."  *Ortiz*, 2025 WL 1350063, at *6.  Plaintiff alleges that Defendants made false statements implicating him in the shooting, which were memorialized in the criminal complaint and forwarded to the prosecutors, despite their knowledge that he was not involved in the shooting.  Am. Compl. ¶¶ 43-44, 45-46.  This criminal complaint later served as the basis for Plaintiff's arraignment.  *Id.* ¶ 47.  Plaintiff also alleges that he was indicted based on Defendants' false allegations and statements, which Defendants made to the grand jury knowing they were false.  *Id.* ¶¶ 49-51.  These allegations amount to "'a police officer's fabrication and forwarding to

prosecutors of known false evidence[,] [which] works an unacceptable corruption of the truth-seeking function of the trial process,' and thus, if proven, would rebut the presumption of probable cause that attaches to an indictment." *Ortiz*, 2025 WL 1350063, at *6 (citations omitted).

As to malice, Plaintiff alleges statements made to him by the Officer Defendants that suggest an insidious reason for his arrest. *See*, Am. Compl. ¶¶ 38, 44. He further claims that Defendants withheld evidence and potentially exculpatory discovery. *Id.* ¶¶ 19-27. These allegations are made more compelling because Defendants based Plaintiff's arrest on charges different from those for which he ultimately was indicted, and the indictment ultimately was dismissed by the court. *Id.* ¶¶ 50, 56. Critically, "with respect to the malice element, the jury could [] reasonably infer[] malice from [] lack of probable cause, as well as from [] evidence of [an officer's] misconduct in fabricating [a] confession." *Ortiz*, 2025 WL 1350063, at *10 n.9 (collecting cases). Based on these allegations, and the Court's prior finding that Plaintiff has pled a fabricated evidence claim sufficiently, the Court concludes that Plaintiff plausibly has pled the malice element. Accordingly, the Amended Complaint adequately states claims for malicious prosecution under federal and state law, and Defendant's motion to dismiss these claims is denied.

**IV.    Remaining Claims**

As previously noted, while Defendants move to dismiss all federal claims except the unlawful search and seizure claim, Plaintiff does not oppose, and consents to, the dismissal of the failure to intervene, supervisory liability, conspiracy, and municipal liability claims. *See*, *generally*, Mot.; Opp'n at 17. "[F]ailure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims." *Ross v. Port Chester Hous. Auth.*, 2019 WL 4738941, at *7 (S.D.N.Y. Sept. 27, 2019) (collecting cases); *See also*, *Wilkov v. Ameriprise Fin. Servs., Inc.*, 735 F. App'x 44, 46 n.1 (2d Cir. 2018) (affirming dismissal of claims

19

that "were 'abandoned' by [the plaintiff] when she failed to oppose them in [] opposition to [the] motion to dismiss"). As the Court finds that Plaintiff abandoned these claims by failing to oppose Defendants' substantive arguments, they are dismissed without prejudice.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. Plaintiff's failure to intervene, supervisory liability, conspiracy, and municipal liability claims, as set forth in Counts IV, V, VI, and VII of the Amended Complaint, are dismissed without prejudice. Defendants' motion is denied as to all other claims.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2025

/s/
DORA L. IRIZARRY
United States District Judge